[Civil No. 4272.   Filed February 10, 1941.]

[110 Pac. (2d) 222.]

T. E. REED, Appellant, v. WALTER McLAWS and ANNA L. McLAWS, Appellees.

Mr. W. Dean Nutting, and Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Messrs. Wilson, Compton & Wilson and Mr. Guy Axline, for Appellees.

ROSS, J.—This is an action for damages for breach of contract to purchase land. On March 22, 1929, the McLaws, husband and wife, plaintiffs herein, agreed to sell, and defendant Reed agreed to buy, a section of land and certain equipment located in Navajo county. Parts of the contract read:

"The sale price of the said premises, and which the second party agrees to pay, is Seven Thousand Dollars ($7,000), Two Thousand Nine Hundred Eighty-seven and 4/100 Dollars ($2,987.04) of which is paid by the second party assuming the balance of principal and interest due to the First National Building and Loan Association, a corporation, who hold a mortgage on the premises, the balance of principal and interest of which is $2,987.04. And the second party agrees to pay this amount as provided by the mortgage, recorded in the office of the County Recorder of Navajo County, State of Arizona, in monthly instalments as they fall due. The remainder of the Seven Thousand Dollars ($7,000), to-wit: Four Thousand Twelve and

96/100 Dollars ($4,012.96) shall be paid as follows, to-wit: One Thousand Dollars on March 22, 1930; One Thousand Dollars on March 22, 1931; One Thousand Dollars on March 22, 1932, and One Thousand Twelve and 96/100 Dollars ($1,012.96) on the 22nd day of March, 1933; together with interest at the rate of six per cent per annum on all deferred payments, payable annually.

. . . . . . . . . . . . . .
"The title to the said property shall remain in the first parties until all covenants, stipulations and agreements herein contained shall have been performed in full; and in the event of a failure to perform any of the covenants under the terms of this contract; the second party shall forfeit all right hereunder, either at law or in equity, without demand or notice, as liquidated damages, but not as a penalty; it being understood that this contract is subject to the terms and conditions of the 1921 Laws affecting such contracts, enacted by the 1921 Legislature of the State of Arizona.

"It is further agreed that the title to the above described real and personal property shall be delivered to the second party free and clear of and from all encumbrances *or* whatsoever kind or nature, and that the title shall be a good and merchantable title. . . . "

Other provisions of the contract were that the plaintiffs would (1) put the De Laval pump and sixteen HP Stover engine at the irrigation well in good running order, so as to pump at least 600 gallons of water per minute, on or before June 1, 1929; (2) would drill a well or two wells, combined or singly, not to exceed 200 feet deep, 8 inches in diameter and completed in good condition, on or before June 1, 1929, and (3) would assign their application to the Aztec Land & Cattle Company for lease of sections 5, 7, 9, 17 and 19, Township 17, North, Range 20 East, G. & S. R. M., to defendant Reed if such application were allowed.

Defendant entered into possession of the premises very soon after the signing of contract and continued

in such possession until on or about August 1, 1929, when he left them and never returned. He made payments of around $40 per month, for three or four months, on the mortgage as he had agreed to do, and paid appellees $100 to be applied on the contract. The defendant failed to make full payment of the mortgage as he had agreed, and this action was brought to recover damages for such failure or breach.

On December 9, 1929, the buildings on the premises were destroyed by fire. The property was insured with the Importers & Exporters Insurance Company, with loss, if any, payable to mortgagee, First National Building & Loan Association. The policy provided that if required to pay the mortgage the insurance company should be subrogated to the rights of the mortgagee to the extent of the payment. The insurance company having paid the proceeds of the policy, amounting to $2,541.94, to the mortgagee, the latter assigned the mortgage to the insurance company. This mortgage was foreclosed by the insurance company for such sum, interest and costs, and the property was, on July 15, 1933, sold under special execution for $2,814.60, or the amount of the judgment. On the theory that plaintiffs' property was used to pay the mortgage which defendant had agreed to pay in his contract of purchase, plaintiffs seek to recover the $2,814.60, the price for which the property was sold under the foreclosure.

The defendant in his answer defended his action, in leaving the premises and abandoning the contract, on the ground that the plaintiffs had failed to perform the above agreements of their contract, or any of them. He alleges that because of such failure, on or about August 1, 1929, he notified plaintiffs that he was turning back and delivering to plaintiffs all of the property described in the contract, and that the plaintiffs accepted such property, took possession and control

thereof and removed therefrom some of the personal property.

The evidence on these issues is conflicting, that of the defendant supporting his allegations of nonperformance and rescission, while that of plaintiffs was to the effect that they had fully performed on their part and that they had not agreed to a rescission. The court, after hearing the case, decided in favor of the plaintiffs.

We think the conflict in the evidence was substantial and that the issues raised by the answer should have been determined before it could be decided which one is right in this controversy. The court, however, made no findings of fact. In such circumstances, it is contended by plaintiffs that our rule is that it will be presumed the court found all facts necessary to support the judgment. *Brown* v. *Peterson,* 27 Ariz. 418, 233 Pac. 895. We think this is the rule when there is nothing in the case showing that such presumption is not true. Here it appears that the judge who rendered the judgment considered, and so informed the parties, the determination of the issues of nonperformance and rescission immaterial and for that reason did not decide them. In a letter to all of the attorneys and parties, the judge wrote:

"This is to advise you that I have this date entered and filed the original of the enclosed decision. No request was made for written findings of fact and conclusions of law, but notwithstanding, I deem it advisable at this time to briefly state the court's views in arriving at this decision.

"The agreement entered into between McLaws and Reed amounted to an unconditional promise on the part of Reed to discharge the encumbrance upon the McLaws land; and having failed to do so, he could not set up any alleged breach by McLaws by way of bar or defense, since the agreement of assumption in fact amounted to an actual cash down payment in so far as Reed was concerned. . . . "

If the judge had made from the bench and in the course of the trial the statement (contained in his letter, *supra*) that "he (Reed) could not set up any alleged breach by McLaws by way of bar or defense," such a declaration would have been accepted as refuting and destroying the presumption the court found every material fact to support the judgment. Since the judge in explaining the judgment made the same declaration, it would be ignoring the actual facts to allow the presumption to prevail in this case.

■ We think the court's views of the law erroneous. The provisions of the contract to be performed by the vendors were just as binding on them as were the provisions to be performed by the purchaser binding on him. The provisions to drill wells and to equip them on or before June 1st and to assign leases to defendant were a part of the consideration the purchaser was to receive for the $7,000 he had agreed to pay. If plaintiffs had failed to make these improvements, or if they had made no application to the Aztec Land & Cattle Company for leases, and did not as alleged intend to, there was a partial failure of consideration and a consequent breach of their contract.

■ Whether or not there was a rescission of the contract is also a question of fact, but if there was, as contended by defendant, it can make no difference in the result whether defendant's promise to pay the mortgage be regarded as actual payment, as between him and plaintiffs, in cash, or as unconditional promise to pay the mortgage in lieu of cash. The duties and obligations of the parties to a rescinded contract are stated as follows:

"To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject to the contract, but to annul the contract and restore the

parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo*, that is, an offer by the moving party to restore all that he has received under it, with a demand for the similar restoration to him of all that he has paid or given under it, and, in effect, a mutual release of further obligations. . . . '' Black on Rescission and Cancellation, 2d ed., vol. 1, sec. 1, p. 1.

'' . . . But after a contract has been rescinded by mutual consent, it cannot be made the basis for any action by one party against the other, except in so far as is necessary to the restoration of the *status quo*. All breaches of the contract are waived by the rescission, and no action can be maintained for any such breach, nor upon any cause of action arising out of the abrogated contract, nor for damages for its nonperformance, nor for compensation for being prevented from performing under it. . . . '' Id., vol. 2, sec. 535, p. 1314.

''Where a contract for the sale of land is rescinded by mutual consent, the rights of the parties under the contract are extinguished. Neither can base any claim thereon, or compel specific performance. Where a contract for the purchase of land has been rescinded by mutual consent, the parties should be restored as nearly as possible to the *status quo*. It has been held that the vendor acquires the equitable interest owned by the purchaser, and of course retains the legal interest formerly owned by himself; the vendor cannot, after such rescission, maintain an action for the purchase price, or upon notes given for purchase money, . . . '' 66 C. J., sec. 305, p. 739.

''This rule requires not only the return of the purchase money received, but also the cancellation, return, or tender back of notes or bonds given for the purchase money; . . . '' Id., sec. 347, p. 763.

If the parties after rescission are entitled to be restored to their status before the contract was made, defendant Reed, if he had paid off the mortgage in cash on the day the contract was signed, would be entitled to the return of such payment.

The case will have to be sent back for a new trial. If in such trial the issues raised by defendant's answer should be found in his favor, there would be no occasion to determine whether defendant's assumption of the mortgage was unconditional and equivalent to a cash payment since, whether it was such, or was a simple assumption of such debt to be paid in the future after the exhaustion of the mortgaged security, the plaintiffs would have no right of action. But if, in a new trial, it should be determined that plaintiffs had performed all their covenants and that defendant's abandonment of the contract was for no reason other than that he rued his bargain and chose to forfeit to the plaintiffs all payments made rather than to complete it, it is necessary to determine the character and effect of such promise. If defendant was at fault and his promise to pay the mortgage as between him and plaintiff was an unconditional assumption of the mortgage, the plaintiffs' right to maintain an action on the promise, when defendant failed to keep it, seems to be clear. If defendant had paid cash in such circumstances, he could not recover it, and if his promise was intended by the parties to be equivalent to cash, he should be required to pay for it. The contract stipulates:

" . . . and in the event of a failure to perform any of the covenants under the terms of this contract, the second party shall forfeit all right hereunder, either at law or in equity, without demand or notice, as liquidated damages, but not as a penalty; . . . "

The contract provides, in short: The sale price of

premises is $7,000, $2,987.04 of which *"is paid"* by second party assuming and agreeing to pay the mortgage in that amount to the First National Building & Loan Association, in monthly installments as the payments fall due, *"the remainder"* to be paid: $1,000 on March 22, 1930, $1,000 on March 22, 1931, $1,000 on March 22, 1932, and $1,012.96 on March 22, 1933, with interest at 6 per cent. per annum on "all *deferred* payment." (Italics ours.)

The intention of the parties to this agreement, if ascertainable, is what controls. As far as they are concerned, they cannot by their agreement change or modify the mortgagee's security or rights thereunder. The land remains a primary fund to pay the mortgage. If the vendor and purchaser, as between themselves, intended the assumption by the latter of the mortgage to be a down payment *pro tanto* on the purchase price, there is nothing we know of to prevent them from so contracting. The question as to whether the purchaser thereby became primarily or secondarily liable, or whether he was the principal and the mortgagor the surety, might in some situations become important but not under the facts here. The "remainder" of the purchase price, or what is left of it, is referred to in the contract as "deferred" payments. This contrasting form of statement refers to a payment on the purchase price, to wit, the assumption of the mortgage as a present payment and the "remainder" as not presently paid but deferred, indicating that the agreement to pay the mortgage was intended and treated as a down payment and that there were no other payments than the four "deferred" ones, which were to be paid one each of the years 1930, 1931, 1932 and 1933.

In *Rathke* v. *Dexter Horton National Bank of Seattle*, 161 Wash. 434, 297 Pac. 181, a like question

was involved. There the contract price of the realty was $23,000 and the first payment of $2,000 was made by the vendees by giving their note and a mortgage therefor, and the balance of $21,000 they agreed to pay as follows: $1,000 annually for five years, and $16,000 the tenth year. The contract was canceled before its full performance. Action was brought against the vendees on their note and mortgage for the $2,000 first payment and the vendees contended that the note and mortgage were only additional evidence of part of the purchase price, and that any balance due upon them when the contract of purchase was canceled became uncollectible. The court held that whether such note and mortgage were a part payment on the purchase price was a question of fact under the circumstances, and concluded that they were in part payment and, notwithstanding the contract of sale had been canceled, that the vendees' obligation could be enforced.

It is a provision of the contract that the title to the property shall remain in the vendors "until all covenants, stipulations, and agreements herein contained shall have been performed," and, while it does not say so, it is an inescapable inference that the purchaser would be entitled to a conveyance of title, free and clear of encumbrance, on his agreement to assume the mortgage and the discharge of the "deferred" payments, or, as the contract states, the "remainder." In other words, a warranty of a free and clear title by the vendors was not an undertaking by them to pay the encumbrance assumed and agreed to be paid by the purchaser.

While we agree with the court's determination, that the assumption of and agreement to pay the mortgage by the defendant was a present payment on the purchase price *pro tanto,* we must reverse the case and

remand it for a new trial in accordance with this opinion.

LOCKWOOD, C. J., and McALISTER, J., concur.