274 P.3d 1211

Jane HALL, a single woman,
Plaintiff/Appellee–Cross
Appellant,

v.

READ DEVELOPMENT, INC., an Arizona corporation; Read Homes, Inc., a Nevada Corporation, Defendant/Appellant–Cross Appellee.

No. 1 CA–CV 10–0175.

Court of Appeals of Arizona,
Division 1, Department C.

April 12, 2012.

As Amended April 26, 2012.

278

Richards Law Office, P.C. By Charles F. Richards and Corrine J. Fields, Phoenix, Attorneys for Plaintiff/Appellee–Cross Appellant.

Israel and Gerity, P.L.L.C. By Kyle A. Israel and Scott A. Alles, Phoenix, Attorneys for Defendant/Appellant–Cross Appellee.

**OPINION**

BROWN, Judge.

¶ 1 In this opinion, we address whether "judgment finally obtained," as used in Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003), is limited to the jury's verdict or whether it includes attorneys' fees ultimately awarded by the trial court. We also consider whether the remedy of rescission is available to a subsequent purchaser in connection with a claim for breach of the implied warranty of habitability. For the following reasons, we hold that for purposes of determining the successful party pursuant to § 12–341.01(A), "judgment finally obtained," as construed and applied in this case, is inclusive of attorneys' fees. We further conclude that under the circumstances presented

here, rescission cannot be properly requested by a subsequent purchaser.[1]

**BACKGROUND**

¶ 2 In 1999, Jane Hall and her now-deceased husband purchased a previously-owned house, originally constructed by Read Development, Inc. ("RDI"). Soon thereafter, Hall experienced various structural problems with the house. In 2004, Hall filed suit against RDI, alleging breach of the implied warranty of habitability and requesting "rescission of the purchase," or alternatively, damages for the costs to repair.[2] RDI later moved for summary judgment on whether Hall was entitled to rescission, asserting that the remedy of rescission was unavailable because Hall, as a subsequent purchaser, was not in privity with RDI. The trial court granted RDI's motion.

¶ 3 At trial, the court granted judgment as a matter of law against Hall on her claims for negligent infliction of emotional distress and punitive damages. The jury found in favor of Hall on her breach of implied warranty of habitability claim and awarded $30,000 in damages, but found in favor of RDI on Hall's intentional infliction of emotional distress claim.

¶ 4 Both parties requested attorneys' fees and costs pursuant to § 12–341.01(A). Under that statute, RDI asserted it was the successful party because its settlement offers exceeded the amount of the jury verdict. Hall countered that the offers did not exceed the "judgment finally obtained," which necessarily consisted of the jury verdict, *plus* attorneys' fees and costs. Hall's fee request totaled $303,496.01, which included only those fees estimated to have been incurred in connection with the implied warranty of habitability claim. Finding that Hall was the successful party, the trial court awarded attorneys' fees in the amount of $227,500. It then reduced this figure by $2,500, the amount awarded to RDI for successfully defending against Hall's request for rescission. The court later issued a final judgment,

---

1. Pursuant to Arizona Rule of Civil Appellate Procedure 28(g), we address other issues raised on appeal by RDI and Hall's cross-appeal by separate memorandum decision filed herewith.

2. In May 2008, Hall filed an amended complaint, adding claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages.

awarding Hall damages of $30,000, taxable costs of $10,757.79, and attorneys' fees of $225,000.

¶ 5 RDI moved for a new trial, asserting the court erred when it granted attorneys' fees to Hall pursuant to § 12–341.01(A). Upon the retirement of the original trial judge, a different judge denied RDI's motion. This appeal and cross-appeal followed.

## DISCUSSION

### I. Trial Court's Decision Regarding Attorneys' Fees

¶ 6 In construing a statute, our fundamental goal is to give effect to legislative intent. *Premiere RV & Mini Storage LLC v. Maricopa Cnty.*, 222 Ariz. 440, 444, ¶ 14, 215 P.3d 1121, 1125 (App.2009). We first look to the language of the rule and will give effect to the plain meaning of its terms as the best indicator of intent unless those terms are ambiguous or would create an absurd result. *Id.* If we find uncertainty about the meaning of the statute's terms, we consider "the statute's context, language, subject matter, historical background, effects and consequences, and spirit and purpose." *Estancia Dev. Assocs., L.L.C. v. City of Scottsdale*, 196 Ariz. 87, 90, ¶ 11, 993 P.2d 1051, 1054 (App.1999) (citation omitted). We review the interpretation of a statute de novo. *Barry v. Alberty*, 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App. 1992).

### A. Discretionary Nature of A.R.S. § 12–341.01

¶ 7 Recovery of attorneys' fees in actions arising out of contract is governed by § 12–341.01(A):

> In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. *If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees.*

(Emphasis added.) Based on the plain language of the statute, fees may be awarded only to "the successful party." Under the first sentence of § 12–341.01(A), a trial court exercises its broad discretion to determine whether a party was successful in the litigation. *See, e.g., Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430, 874 P.2d 982, 987 (App.1994) (recognizing, in the context of § 12–341.01(A), that a determination of the successful party "will not be disturbed on appeal if any reasonable basis exists for it"); *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App.1990) ("The trial court possesses discretion to determine who is the successful party in multiple-party litigation and in cases where there are multiple-parties as well as multiple-claims." (citation omitted)).

¶ 8 Once the court determines the successful party, the court weighs various factors to decide the amount of fees, if any, to be awarded the successful party, an exercise that is also highly discretionary. *See, e.g., Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985) ("[T]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge." (citation and internal quotation omitted)).

¶ 9 The second sentence of the statute, added in 1999, seemingly narrows the trial court's discretion in handling fee determination issues in contract cases, obligating the court to compare a written settlement offer against the "judgment finally obtained." A.R.S. § 12–341.01(A); S.B. 1159, 44th Leg., 1st Reg. Sess. (Ariz.1999). If the offer is more favorable than the judgment finally obtained, then the offeror is "deemed" to be the successful party "from the date of the offer." Therefore, an offeror is the successful party, even if an offeree obtains a favorable judgment, if the offeror previously made a written offer for an amount equal to or greater than the final judgment. Under such circumstances, however, the offeror is the successful party in the litigation only

after the date of the offer and the trial court still retains its broad discretion to award the successful party some, all, or none of its claimed attorneys' fees. *See* 2A Daniel J. McAuliffe, Arizona Legal Forms, Civil Procedure § 68.0 (3d ed.) ("While the amendment to the statute is not artfully worded, it seems to provide that, if a defendant in a contract action makes a written settlement offer during the course of the case which is rejected, and the plaintiff's ultimate recovery is less than the amount of the offer, then the defendant is entitled to seek a discretionary award of attorneys' fees incurred from and after the date the offer was made.").

¶ 10 Moreover, nothing in the language of the statute indicates that these methods are necessarily mutually exclusive directives for determining the successful party. The first contemplates an overall assessment of whether the plaintiff prevailed on his or her contractual claim. The second presumes a comparison of a settlement offer against the final judgment, potentially altering the successful party designation from the date of the offer. *Cf. Drozda v. McComas*, 181 Ariz. 82, 84, 887 P.2d 612, 614 (App.1994) (harmonizing Arizona Rule of Civil Procedure 68 and § 12–341 by holding that although the judgment finally obtained by plaintiff was less than defendant's offer of judgment, plaintiff was still the successful party and therefore entitled to recover both pre-offer and post-offer costs under § 12–341; however, plaintiff was also required to pay defendant's post-offer costs); Arizona Attorneys' Fees Manual § 2.6.2 (Bruce E. Meyerson & Patricia K. Norris eds., Fifth ed. 2010) (recognizing that § 12–341.01(A) "fixes the status of 'successful party' as of a date certain" and "[i]t remains to be seen whether, for example, the award of fees to the party making a qualifying offer under the statute should be offset by the fees incurred up to the date of the offer by the

party who is otherwise the prevailing party in the case").[3]

¶ 11 Here, after extensive briefing and oral argument, the trial court first determined that by "presenting her complaint to a jury and attaining a verdict awarding damages," Hall was the successful party for "purposes of both A.R.S. § 12–341 and § 12–341.01." [4] Recognizing that RDI "might become the successful party 'from the date of the offer' under § 12–341.01(A)," the court then addressed RDI's claim that it prevailed under the settlement comparison test:

> [RDI] contends it is the successful party because of offers to settle made January 25, 2007, the most favorable of which was for the sum of $40,000, made with the understanding that if [Hall] accepted, each party would be responsible for respective costs and attorney fees incurred. [RDI] urges that the analysis of this offer under [A.R.S.] § 12–341.01(A) is simple: $40,000 is more tha[n] the $30,000 jury award, *ergo* [RDI] is the successful party from January 25, 2007.

> The language of the statute does not compare the offer to the jury verdict, but rather 'the judgment finally obtained,'[5] which in this case will, at a minimum, include the jury award and the award of costs, which total is less favorable to the offeror [RDI], than the January 25, 2007 offer. [RDI] is thus not the successful party from January 25, 2007.

> [RDI] next points to an offer of judgment made March 2, 2009 in the amount of $126,000[.] In order for the judgment finally obtained in this case, which will include the jury award, the award of costs, and an award for recovery of attorneys['] fees, to be more favorable to offeror [RDI] than the $126,000 settlement offer, [Hall's]

**3.** Whether there can be a "hybrid" determination of "successful party" is not squarely before us; however, it is relevant in construing the legislative intent of the statute. At oral argument before this court, counsel for both parties acknowledged that the second sentence of § 12–341.01(A) may change the successful party status as of the date of an offer and the offeree could still be the prevailing party prior to that point.

**4.** Other than asserting it should be deemed the successful party "from the date" of its settlement offers, RDI does not challenge this finding.

**5.** Additionally, at oral argument, the trial court explained: "[W]hether artfully expressed or not, the legislature anticipated an analysis that included more than a simple comparison of the offer made [to] the jury verdict rendered."

recovery of attorneys['] fees would have to be less than $85,242.21.

[Hall] seeks recovery of $303,496.01 in attorneys['] fees, a figure the court would have to discount by nearly 72% to limit [Hall's] judgment finally obtained to less than the $126,000 offer. [RDI] provides no basis for reducing [Hall's] attorneys['] fees claim so significantly[.]

The court therefore rejected RDI's argument that it was the successful party under the settlement comparison test of § 12–341.01(A), and applied the *Warner* factors in awarding Hall a portion of her requested attorneys' fees. *See Warner,* 143 Ariz. at 570, 694 P.2d at 1184.

### B. Judgment Finally Obtained

■ ¶ 12 RDI contends the trial court erred when it applied the settlement comparison test of § 12–341.01(A) by incorporating attorneys' fees and costs in the final judgment and comparing this sum with the various settlement offers RDI made to Hall during the litigation. RDI asserts that the statute requires a comparison between the settlement offer and the jury verdict, and that a trial court cannot simply "add a plaintiff's attorney's fees to the verdict before comparing the sum to the defendant's offer." We disagree.

¶ 13 The plain language of the second sentence of § 12–341.01(A) requires a comparison of the amount of the settlement offer versus the amount of the "judgment finally obtained," not just the jury's verdict. *See Berry v. 352 E. Virginia, L.L.C.,* 228 Ariz. 9, 14, ¶ 28, 261 P.3d 784, 789 (App.2011). Recognizing the obvious, we noted in Berry that the statute does not refer to the "verdict finally obtained;" instead, the legislature used the term "judgment finally obtained." *Id.* at ¶ 27. Analyzing the commonly understood meaning of judgment, we determined that a "judgment finally obtained" could "exceed the scope and amount of a jury's verdict." *Id.* at ¶ 28. We further noted that, in

the context of Rule 68, other courts have concluded that "judgment finally obtained" refers to the court's rendering of a final judgment. *Id.* We therefore held the "judgment finally obtained" in that case was inclusive of the verdict, taxable costs,[6] and prejudgment interest because those items were awarded in the final judgment. *Id.* at 15, ¶ 29, 261 P.3d at 790. Although the final judgment included attorneys' fees, we found it unnecessary to address "whether attorneys' fees are also to be included in the 'judgment finally obtained.'" *Id.* at n. 4.

¶ 14 Similar to our reasoning in *Berry*, we conclude that the legislature's decision to use the phrase "judgment finally obtained," must be given legal effect. That phrase means the sum ultimately obtained in a particular case, which in the present judgment includes attorneys' fees. *See id.* at ¶ 29; *see also Vega v. Sullivan,* 199 Ariz. 504, 508, ¶ 11, 19 P.3d 645, 649 (App.2001) (concluding that "judgment," in the context of then Uniform Rule 7(f),[7] included the entire final judgment because "[n]either Uniform Rule 7(f) nor any other provision in the Uniform Rules permits a portion of the judgment to be ignored for purposes of comparison to the arbitration award"). Had the legislature intended a comparison of only the jury verdict to the settlement offer, or to some amount less than the judgment finally obtained, it could have said so, but did not. *See Vega,* 199 Ariz. at 508, ¶ 12, 19 P.3d at 649; *Heatec, Inc. v. R.W. Beckett Corp.,* 219 Ariz. 293, 296, ¶¶ 8–9, 197 P.3d 754, 757 (App.2008) (recognizing that the legislature is presumed to know the meaning ascribed to words when it enacts statutes).

### C. Legislative Purposes and Rule 68

¶ 15 RDI contends nonetheless that a comparison of the final judgment as inclusive of attorneys' fees requires the trial court to determine attorneys' fees *before* determining the identity of the successful party. RDI

---

6. A judgment does not always include taxable costs because a successful party may file and serve a statement of costs "within ten days after judgment." Ariz. R. Civ. P. 54(f)(1). However, we do not address this possibility because the judgment here included taxable costs.

7. "Effective December 1, 2000, the Uniform Rules of Procedure for Arbitration were abrogated[.]" *Vega,* 199 Ariz. at 505 n. 1, ¶ 1, 19 P.3d at 646 n. 1.

therefore argues that this puts the proverbial "cart before the horse" and thus, the statute must be interpreted to implicitly exclude attorneys' fees from the final judgment.

¶ 16 We acknowledge that the second sentence of § 12–341.01(A) requires a court to "prejudge" components of the final judgment that have not yet been completely resolved, such as taxable costs, prejudgment interest, and attorneys' fees, and then decide what amounts will carry forward to the final judgment. Calculating non-discretionary items such as costs and prejudgment interest should be relatively straightforward for purposes of comparing the offer and judgment. But decisions regarding attorneys' fees require the exercise of substantial discretion, the application of which is undoubtedly more complex as a result of the legislature's addition of the settlement comparison test. As occurred here, trial courts will have no choice but to exercise their discretion to determine the amount of reasonable attorneys' fees incurred up to the date of the offer (and would thus be included in the final judgment) when comparing a settlement offer to the judgment finally obtained. Otherwise a court cannot comply with the directive of the statute. However, this methodology reflects a legislative choice and is consistent with the broad discretion granted to trial courts under the first sentence of § 12–341.01.[8] We therefore reject RDI's suggestion that interpreting "judgment finally obtained" as inclusive of attorneys' fees and costs "would almost always result in a plaintiff exceeding the offer" and "allow for a plaintiff to run up attorneys' fees to the point where the case cannot be settled." We presume that trial courts will appropriately exercise their discretion in evaluating relevant factors and will award only those fees, if any, "reasonably" incurred by the successful party.

¶ 17 We readily acknowledge that the second sentence of § 12–341.01(A) fails to provide any specificity as to what fees and costs in the judgment should be utilized in the comparison to the settlement offer: those incurred up to the date of the offer, or those incurred through the date of the judgment. But we resolve this lack of detail by adhering to the overall legislative intent and harmonizing the statute with Rule 68.

¶ 18 The purposes of § 12–341.01(A) include: (1) mitigating "the burden of the expense of litigation to establish a just claim or a just defense;" (2) encouraging "more careful analysis prior to filing suit" by imposing the risk of paying the opposing party's attorneys' fees where legitimate settlement offers are rejected; and (3) promoting settlements and thus reducing caseloads involving contractual matters. *See* A.R.S. § 12–341.01(B); *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 29, ¶ 43, 126 P.3d 165, 176 (App.2006); Ariz. S.B. 1159, Fact Sheet. A settlement offer typically represents a party's willingness to pay a sum certain to avoid the uncertainty of being held liable for a greater amount based on damages awarded, plus attorneys' fees and/or costs. At the time the offer is made, the offeror should be able to anticipate that if the offer is accepted, the offeror's exposure in the litigation terminates, including any liability for attorneys' fees or costs. *See Marek v. Chesny*, 473 U.S. 1, 7, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (explaining that "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff"). Nothing in the language of § 12–341.01(A) persuades us that the legislature intended a different approach.

¶ 19 Consistent with the statutory goals, the purpose of Rule 68, which governs offers

8. The trial court's role under § 12–341.01(A) in "pre-judging" the attorneys' fee award involves an inquiry similar to the one required in assessing whether a party is entitled to sanctions under Rule 68 when attorneys' fees are claimed. In that instance, before the court decides whether the threshold has been satisfied, the court must determine the amount of "reasonable" fees incurred prior to the date of the offer. *See* Ariz. R. Civ. P. 68(g) ("If the judgment includes an award of taxable costs or attorneys' fees, only those taxable costs and attorneys' fees determined by the court as having been reasonably incurred as of the date of the offer was made shall be considered in determining if the judgment is more favorable than the offer."); *see also* Ariz. R. Civ. P. 68, State Bar Committee Note 2007 Amendments (stating that a court may require a hearing to assess reasonableness of fees incurred as of the date the offer was made).

of judgment in general civil cases and therefore applies to matters arising out of contract, is to "encourage settlement and eliminate needless litigation." *See Warner v. Sw. Desert Images, LLC,* 218 Ariz. 121, 138, ¶ 57, 180 P.3d 986, 1003 (App.2008). Rule 68 provides for sanctions where an "offeree rejects an offer and does not later obtain a more favorable judgment other than pursuant to this Rule." Ariz. R. Civ. P. 68(g). The available sanctions do not include attorneys' fees; however, if the judgment includes an award of attorneys' fees, only those fees "determined by the court as having been reasonably incurred as of the date the offer was made shall be considered in determining if the judgment is more favorable than the offer." *Id.* Because a Rule 68 offer would also unquestionably qualify as a written offer under § 12–341.01(A), and would likely be invoked in a breach of contract action in order to potentially shift the "successful party" designation for at least part of the litigation, we will strive to find consistent application of the settlement comparison test and Rule 68. *See Drozda,* 181 Ariz. at 85, 887 P.2d at 615 (construing Rule 68 together with § 12–341 and stating that "[o]ur rules of procedure and statutes should be harmonized wherever possible and read in conjunction with each other") (quoting *Phoenix of Hartford, Inc. v. Harmony Rests., Inc.,* 114 Ariz. 257, 258, 560 P.2d 441, 442 (App.1977))).

¶ 20 We conclude that comparing the "judgment finally obtained" under § 12–341.01(A) to a settlement offer should involve only those reasonable fees and costs incurred as of the date the offer was made. This approach fulfills the purposes of the statute and provides an accurate comparison of the settlement offer with the final judgment, ensuring the final judgment includes only those attorneys' fees and costs that were incurred at the time of the settlement offer and included in the final settlement figure. *Cf. Hales v. Humana of Arizona, Inc.,* 186 Ariz. 375, 378, 923 P.2d 841, 844 (App.1996) (ex-

plaining that former Rule 68(d) "requires an 'apples to apples' comparison between the judgment and the offer"). A contrary reading of the statute would yield illogical results. For example, if a defendant in a contract action files a Rule 68 offer and requests sanctions against the plaintiff, the defendant's offer must be compared to fees incurred up through the date of the offer. That same offer, however, under § 12–341.01(A), could yield an entirely different result if we were to read the statute as comparing a settlement offer against fees incurred throughout the entire case. We cannot conclude the legislature intended that result or that it desired to impose such an unnecessarily complex burden on the courts when evaluating whether settlement offers exceed the amount of the judgment finally obtained.[9]

## D. Evaluation of Settlement Offers

¶ 21 We now consider whether the trial court erred in performing the comparison contemplated by § 12–341.01(A) and analyze each settlement offer made by RDI in turn. As noted, the court expressly found that Hall was the successful party because she prevailed on her contractual claim. As a secondary question, the court considered but rejected RDI's assertion that it offered Hall more than she ultimately obtained in the litigation. Although the court's analysis was not necessarily correct in its entirety, the court reached the correct result.

¶ 22 RDI initially offered Hall $15,000 as "full and final settlement." However, because the jury's verdict alone totaled $30,000, RDI did not obtain an award at trial "more favorable to the offeror" than the settlement offer.

¶ 23 In January 2007, RDI made three alternative offers. It first offered "to buy back [Hall's] home for her purchase price ($96,000) plus an additional $20,000, for a total of $116,000." Under this offer, although RDI was willing to expend $116,000,

---

9. We construe the settlement comparison test of § 12–341.01(A) in this fashion based on the wording selected by the legislature. If the legislature intended a different methodology for courts to follow when implementing the test, we presume it will make appropriate adjustments to

the statutory language. *See Helvetica Servicing, Inc. v. Pasquan,* 630 Ariz. Adv. Rep. 4, ¶ 37 (App. Mar. 20, 2012) ("If the legislature disagrees with our resolution of this admittedly murky issue, we presume it will amend the existing statutory scheme to make clear its intentions.").

in return it would have received Hall's house. As a result, it would be improper to include the $96,000 in the calculation because RDI would have received an asset arguably equal in value to its expenditure. Therefore, RDI effectively made a settlement offer of $20,000, and because the judgment totaled $30,000, RDI did not obtain a more favorable result.

¶ 24 RDI's second alternative offer stated, "[RDI] offers to make the repairs ... (costing approximately $20,000) and also offers to pay [Hall] an additional $20,000." Similarly, the third offer stated, "[RDI] offers to pay [Hall] $40,000, allowing [Hall] to hire her own replacement contractor to perform and warrant the repairs and keep the additional $20,000." At the time of these two offers, Hall had incurred $69,396.50 in attorneys' fees, not including taxable costs of several thousand dollars. RDI did not contend the fee amount stated by Hall was unreasonable or request an evidentiary hearing as to reasonableness. Even if the trial court reduced the requested fees by 75%, RDI would not have achieved a more favorable result.

¶ 25 About one month before trial, RDI later made its final offer for $126,000. As indicated in Hall's objection to RDI's statement of taxable costs, Hall had incurred $206,692.81 in attorneys' fees—an amount that was unchallenged by RDI and far exceeds RDI's offer.

¶ 26 The record before us supports the trial court's conclusion that RDI did not ultimately obtain a more favorable judgment than any of its offers. Accordingly, the court did not abuse its discretion in rejecting RDI's assertion that it was the successful party pursuant to the settlement comparison test of § 12–341.01(A).[10] *See Hale v. Amphitheater Sch. Dist. No. 10 of Pima Cnty.,* 192 Ariz. 111, 117, 961 P.2d 1059, 1065 (App. 1998) ("An award of attorneys' fees and costs under § 12–341.01 is left to the sound discre-

tion of the trial court and will not be reversed on appeal absent an abuse of discretion.").

## II.  Rescission

¶ 27 On cross-appeal, Hall asserts that the trial court improperly granted summary judgment to RDI on her request for rescission. She contends that because a party need not be in privity to maintain an action for breach of the implied warranty of habitability in Arizona, by implication, privity is also not required for the remedy of rescission. We disagree.

¶ 28 Summary judgment may be granted when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). We review a trial court's grant of summary judgment de novo. *Chalpin v. Snyder,* 220 Ariz. 413, 418, ¶ 17, 207 P.3d 666, 671 (App. 2008).

¶ 29 Generally, "only the parties and privies to a contract may enforce it." *Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.,* 218 Ariz. 574, 575, ¶ 5, 190 P.3d 733, 734 (2008) (citation and internal quotation omitted). A claim for breach of the implied warranty of habitability sounds in contract. *Id.* However, in *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 245, 678 P.2d 427, 430 (1984), our supreme court recognized an exception to the privity requirement, allowing subsequent purchasers of a house to bring a claim for breach of the implied warranty of habitability against the builder. The court reasoned that latent defects are "just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work." *Id.* The court concluded that "[b]ecause the builder-vendor is in a better position than a subsequent owner to prevent occurrence of major problems, the costs of poor workman-

---

10. Although the trial court considered the full amount of attorneys' fees and costs requested by Hall in applying the settlement comparison test, instead of the fees and costs incurred up until date of the offers, documentation provided by Hall in support of her fee request supports the trial court's ultimate conclusion. *See Gen. Electric Capital Corp. v. Osterkamp,* 172 Ariz. 191,

193, 836 P.2d 404, 406 (App.1992) (noting that an appellate court is obligated to affirm the judgment of the trial court if it is legally correct for any reason); *Rowland v. Great States Ins. Co.,* 199 Ariz. 577, 587, ¶ 31, 20 P.3d 1158, 1168 (App.2001) (recognizing that under § 12–341.01, we view the record in the light most favorable to sustaining the trial court's decision).

ship should be his to bear." *Id.* The court therefore held that "privity is not required to maintain an action for breach of the implied warranty of workmanship and habitability." *Id.*

¶ 30 The contractual remedy of rescission "abrogate[s the contract] and undo[es] it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." *Reed v. McLaws,* 56 Ariz. 556, 562–63, 110 P.2d 222, 225 (1941). Thus, rescission restores the parties to the status quo before entering into the contract. *Id.* at 563, 110 P.2d at 225. Generally, rescission is justified where a failure of consideration of an essential part of a contract exists. *Miller v. Crouse,* 19 Ariz.App. 268, 272, 506 P.2d 659, 663 (1973).

¶ 31 *Richards* did not address the situation before us—whether a subsequent purchaser may seek to rescind a contract to which he was not a party. Nor is there any suggestion in *Richards* that our supreme court contemplated that a claim based on the implied warranty of habitability would include the right to nullify the original transaction. Instead, the court simply removed the obstacle of privity, in the context of an implied warranty of habitability claim, to ensure that homebuilders were held accountable and that deserving subsequent purchasers had the opportunity to obtain a recovery for damages. *Richards,* 139 Ariz. at 245, 678 P.2d at 430. Accomplishing those purposes does not require rescission of a contract; instead, the purposes can be fulfilled by awarding compensatory damages to the injured party.

¶ 32 Moreover, providing subsequent purchasers with the ability to rescind a contract negotiated and entered into between other parties is not a viable solution. We cannot

return RDI and Hall to the status quo because they never contracted with each other; instead, RDI sold the house to the original purchaser. Hall's only contract was with the original purchaser of the house. We therefore decline to require a builder to return funds to a subsequent purchaser who paid no funds to the builder. *Cf. Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 35, 945 P.2d 317, 346 (App.1996) (holding in a tort case that "because rescission is primarily a remedy between principals, rescissory damages ought not be available against a third party, like [defendant], who has not been unjustly enriched" because out-of-pocket damages must be adopted where the defendant is a third party who has made no contract with the plaintiff); *Chaurasia,* 212 Ariz. at 25, ¶ 20, 126 P.3d at 172 (in the implied warranty of merchantability context, plaintiff's claim for revocation of acceptance failed as a matter of law due to lack of privity). Thus, Hall's claim for rescission fails as a matter of law.

## CONCLUSION

¶ 33 For the foregoing reasons, and those set forth in our memorandum decision, we affirm the judgment of the trial court.

CONCURRING: DANIEL A. BARKER, Presiding Judge * and MARGARET H. DOWNIE, Judge.

* Judge Daniel A. Barker was a sitting member of this court when the matter was assigned to this panel. He retired effective December 31, 2011. In accordance with the authority granted by Article 4, Section 3 of the Arizona Constitution and pursuant to A.R.S. § 12–145 (2003), the Chief Justice of the Arizona Supreme Court has designated Judge Barker as judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term of office.