IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

MOLLY LAMBERTUS, *Petitioner*,

*v.*

THE HONORABLE GERALD PORTER,
Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA,
in and for the County of MARICOPA, *Respondent Judge*

LINDA FAYE DAY-STRANGE, *Real Party in Interest*.

No. 1 CA-SA 14-0085
FILED 08-12-2014

———————————————

Appeal from the Superior Court in Maricopa County
No. FC2013-052939
The Honorable Gerald Porter, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

———————————————

COUNSEL

Pangerl Law Firm, PLLC, Phoenix
By Regina Pangerl

The Murray Law Offices, P.C., Scottsdale
By Stanley David Murray
*Co-Counsel for Petitioner*

Gregan & Associates, Mesa
By Lawton Connelly
*Counsel for Real Party in Interest/Intervenor*

―――――――――――――

**OPINION**

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Randall M. Howe joined and Judge Michael J. Brown dissented.

―――――――――――――

**T H O M P S O N**, Judge:

¶1 This special action arises out of the trial court's temporary order in a paternity action brought by Molly Lambertus (Mother) against Tyler Day (Father) ordering that paternal grandmother Linda Faye Day-Strange (Grandmother) receive two hours of visitation per week with Child. For the following reasons, we accept jurisdiction and deny relief.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 Child was born on August 28, 2013. Father, who is serving a lengthy prison sentence[1], signed an acknowledgment of paternity. Mother obtained an amended birth certificate naming Father as Child's biological father before filing the paternity action in December 2013. Grandmother filed a motion to intervene in the paternity action, which Mother did not object to and the trial court granted. In early February 2014, Grandmother filed a petition for grandparent visitation and a motion for a temporary order granting her visitation with Child. Mother filed a motion to strike Grandmother's motion for temporary orders. Also in February 2014, the court appointed a Court Appointed Advisor (CAA) to investigate Mother's concerns about Grandmother and Father's concerns about Mother, ordered Mother to undergo a hair follicle test,[2] and ordered Grandmother to undergo random alcohol testing.

¶3 In April 2014, the trial court held an evidentiary hearing on temporary orders. After taking testimony from the CAA, Mother, and Grandmother, the court ruled that, on a temporary basis, Grandmother would have two hours per week of visitation with Child at a pizza

―――――――――――

[1] As of the February 28, 2014 hearing, Father had six and one-half years left to serve of his sentence.

[2] The court's order stated "[t]he Hair Follicle Test shall be for Screen B (most commonly abused 5 street drugs)."

restaurant on the day and time selected by Mother beginning April 27, 2014. Visits were to take place only at the restaurant unless the parties agreed in writing to another location. The court further ordered stopping Grandmother's random alcohol tests, with the caveat that Mother could discontinue any visit if she had concerns about Grandmother's sobriety and Grandmother would then need to immediately go for alcohol testing.

¶4        Mother filed a motion with the trial court to stay the temporary orders, which the trial court denied. She filed this special action and a request for stay, which we denied after a hearing.

## DISCUSSION

¶5        Special action jurisdiction is appropriate because the order complained of here is a temporary order granting visitation rights and there is no adequate and speedy remedy by appeal. *See Finck v. Superior Court*, 177 Ariz. 417, 418, 868 P.2d 1000, 1001 (App. 1993); Ariz. R.P. Spec. Act. 1(a).

¶6        In her petition for special action, Mother argues that the trial court lacks subject matter jurisdiction to grant temporary visitation to Grandmother. She further argues that her right to due process was violated because she did not have sufficient time to prepare for the hearing on temporary orders.

¶7        Mother's reference to "subject matter jurisdiction" with regard to the first issue is imprecise. Article 6, Section 14(1), of the Arizona Constitution gives the superior court original jurisdiction of "[c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court." The superior court has original jurisdiction of paternity actions. Arizona Revised Statutes (A.R.S.) § 12-123(A) (Supp. 2013) provides that the superior court "ha[s] original and concurrent jurisdiction as conferred by the constitution . . . ." Section 12-123(B) further provides that "[t]he court, and the judges thereof, shall have all powers and may issue all writs necessary to the complete exercise of its jurisdiction." Section 25-801 (2007) provides that the superior court has original jurisdiction in proceedings to establish paternity and that "[a]ll such proceedings shall be civil actions."

¶8        The question before us is whether the trial court had statutory or other authority to issue the temporary order for visitation in this case. We conclude that it did.

¶9        Arizona Revised Statutes § 25-409(C) (Supp. 2013) provides:

> Pursuant to § 25-402, subsection B, paragraph 2, a person other than a legal parent may petition the superior court for visitation with a child. The superior court may grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests and that any of the following is true: . . . (2) the child was born out of wedlock and the child's parents are not married to each other at the time the petition for visitation is filed.

Arizona Revised Statutes § 25-404(A) (Supp. 2013) provides that "[a] party to a legal decision-making and parenting time proceeding may move for a temporary order."  The trial court determined here that Grandmother was a party to a legal decision-making and parenting time proceeding because she had intervened in the paternity action.  Although not cited by the parties, A.R.S. § 25-817 similarly provides, in relevant part:

> A. Pending a judicial determination of paternity, the court shall issue a temporary order of support, and may issue a temporary order regarding custody and parenting time, if any of the following applies:
>
> . . . .
>
> 2. A notarized or witnessed statement is signed by both parents acknowledging paternity . . . and filed with the department of health services pursuant to § 36-334 or filed with the department of economic security.
>
> . . . .
>
> B. A temporary order issued pursuant to this section does not prejudice the rights of a person or child that are adjudicated at subsequent hearings in the proceeding.

C. A temporary order issued pursuant to this section may be revoked or modified and terminates when the final support, custody or parenting time order is entered or when the petition for support, custody or parenting time is dismissed.

**¶11** Mother argues that Grandmother is not "[a] party to a legal decision-making and parenting time proceeding" under A.R.S. § 25-404(A) and therefore the superior court lacked statutory authority to issue the temporary order for visitation. Although it is true that sections 25-404 and 25-817 do not contain the word "visitation," A.R.S. § 25-402 (Supp. 2013) does. Section 25-402 instructs the court to determine whether it has jurisdiction before "conduct[ing] a proceeding concerning legal decision-making or parenting time, including a proceeding to determine the legal decision-making or visitation of a nonparent. . . ." That provision evidences that the legislature intended visitation of a nonparent to be included under "legal decision-making or parenting time."

**¶12** Additionally, A.R.S. § 12-123 (B) provides that "[t]he court, and the judges thereof, shall have all powers and may issue all writs necessary to the complete exercise of its jurisdiction." Superior court judges also have inherent authority "to conduct such proceedings and issue such orders as are necessary to the complete administration of justice . . . ." *Arpaio v. Baca*, 217 Ariz. 570, 576, ¶ 19, 177 P.3d 312, 318 (App. 2008) (citing *Schavey v. Roylston*, 8 Ariz. App. 574, 575, 448 P.2d 418, 419 (1968)). We conclude that the authority to make temporary orders as to grandparent visitation in an appropriate case is necessary to the court's exercise of its jurisdiction over child custody and visitation issues.

**¶13** Mother's due process argument is without merit. Grandmother filed her petition for visitation on February 5, 2014. At the February 28, 2014 hearing, the trial court appointed the CAA and ordered all parties, including Grandmother, to fully comply with the CAA's investigation. The court set a review hearing on Friday, April 18, 2014. The judge informed the parties that he would not enter temporary orders on April 18, but if temporary orders were still required he would hold a hearing within a week of that date.

**¶14** The CAA filed her report on April 8, 2014. The court held the review hearing on Friday, April 18, 2014, ordered Grandmother to sign medical releases, and set the evidentiary hearing for Monday, April 21,

2014. Mother did not object at that time to the hearing being set on Monday, but by the end of the day she filed an emergency motion to continue the April 21 hearing. On the morning of the hearing, counsel for Mother objected that she had not had adequate time to prepare, and that she wanted more time than the twenty minutes per side the court had allotted.

¶15 By April 21, the court had had the CAA's report for almost two weeks. Although Mother states in her reply that the parties did not receive the report until April 18, she acknowledges that she learned of the CAA's "report and recommendations" about a week before the April 18 hearing. Grandmother did not dispute Mother's allegations about her past alcohol abuse, and the CAA testified that Grandmother had been candid with her about her past problems with alcohol.

¶16 The trial court did not violate Mother's due process rights in setting the evidentiary hearing on temporary orders when it did––more than two months after Grandmother filed her petition for visitation. Although Mother argues that the court "suddenly decided to set an evidentiary hearing," all of the parties had known the course the judge planned to take because he let them know on February 28 that he would 1) get the report, 2) hold a review hearing on April 18, and 3) schedule the evidentiary hearing on temporary orders, if still needed, within a week of the April 18 hearing.

¶17 Both parties request attorneys' fees pursuant to A.R.S. § 25-324 (Supp. 2013). In our discretion, we decline to award attorneys' fees.

¶18 For the foregoing reasons, we accept jurisdiction and deny relief.

**B R O W N**, Judge, dissenting:

¶19 I disagree with the majority's conclusion that A.R.S. § 25-402, or any other statute in Title 25, authorized the trial court to grant Grandmother's visitation request as a temporary order.

¶20 In December 2013, Mother filed a petition for paternity, legal decision-making, parenting time, and child support, which the majority refers to as the "paternity action." Grandmother sought to intervene in the paternity action and requested temporary visitation. She then filed a motion for a temporary order, asserting that under A.R.S. § 25-315 the trial court had authority to enter such an order and it was in Child's best

interests to adopt Grandmother's proposed visitation schedule.[3] In response, Mother filed a motion to strike Grandmother's motion, asserting that temporary orders are governed by A.R.S. § 25-404(A) and "there is no legal or statutory basis upon which Paternal Grandmother has the legal right to seek temporary orders for grandparent visitation."

¶21 On February 28, 2014, the trial court held a return hearing on the pending motions. The court denied Mother's motion to strike, stating that because Grandmother is a party under A.R.S. § 25-404, "that pretty much resolves the issue of whether she can or cannot pursue temporary orders." The court also noted that "there's nothing that doesn't permit [temporary orders] either." Responding to cross-allegations of substance abuse, the court appointed the CAA and ordered Grandmother and Mother to report for substance abuse testing.

¶22 On April 18, the trial court held a review hearing. Mother explained that the CAA had not been provided with all the relevant documentation in order to make a recommendation because Grandmother had failed to sign medical releases related to hospitalization for excessive alcohol consumption in July 2013. Presumably agreeing on the importance of the documentation, the court ordered Grandmother to provide the releases. After Mother's counsel reiterated her contention that § 25-404 does not authorize temporary orders for grandparent visitation, the court responded that as an alternative it could order parenting time for Father and compel Mother to take Child to visit him in prison.

¶23 Three days later, the court held an evidentiary hearing on Grandmother's motion for temporary orders. At the outset of the hearing, Mother noted that Grandmother had still not provided the requested medical releases. The CAA testified in favor of Grandmother being granted temporary visitation, but acknowledged on cross-examination that she had not reviewed any of Grandmother's medical records regarding alcohol abuse. After Mother and Grandmother each testified regarding a myriad of accusations of alcohol abuse, drug abuse, and harassment by all parties, the court granted Grandmother's request for a temporary visitation order.

¶24 Arizona law expressly provides that a trial court has discretion to grant visitation rights to nonparents. A.R.S. § 25-409(C) ("The superior court *may* grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests[.]") (emphasis

---

[3] Although A.R.S. § 25-315 refers to temporary orders, it does not address visitation.

added); *Egan v. Fridlund-Horne*, 221 Ariz. 229, 238, ¶ 31, 211 P.3d 1213, 1222 (App. 2009) ("[T]he right of a nonparent to visitation is discretionary with the superior court."). In evaluating a request for visitation, a court "shall give special weight to the legal parents' opinion of what serves their child's best interests." A.R.S. § 25-409(E); *see also McGovern v. McGovern*, 201 Ariz. 172, 177, ¶ 17, 33 P.3d 506, 511 (App. 2001) (holding that courts "should recognize and apply a presumption that a fit parent acts in his or her child's best interest in decisions concerning the child's care, custody, and control, including decisions concerning grandparent visitation").

**¶25** The law also provides that a trial court's authority to address matters in domestic relations proceedings is established by statute. *See Fenn v. Fenn*, 174 Ariz. 84, 87, 847 P.2d 129, 132 (App. 1993) ("Courts may do many things in the best interests of children, but they cannot advance such interests by exercising jurisdiction that they lack. Every power that the superior court exercises in a dissolution proceeding must find its source in the supporting statutory framework."); *cf. Hunt v. Hunt*, 22 Ariz. App. 554, 556, 529 P.2d 708, 710 (1974) ("In the absence of statutory authorization, it is our opinion that the trial court committed error when it included a temporary custody order in its final judgment which decided the issue of dissolution of the marital bonds."). Because no statute gives a trial court the legal ability to award visitation to a nonparent at a temporary orders proceeding, the court in the instant case acted in excess of its authority.

**¶26** The plain language of A.R.S. § 25-402 does not address temporary orders; rather, it governs the extent of the authority of Arizona's courts over "legal decision-making or parenting time" proceedings. Section 25-402 thus requires that before a court conducts a proceeding concerning legal decision-making or parenting time, including a proceeding to determine the legal decision-making or visitation of a nonparent, the court "must confirm its authority to do so to the exclusion of any other state, Indian tribe or foreign nation by complying with the uniform child custody jurisdiction and enforcement act, the parental kidnapping prevention act and any applicable international law concerning the wrongful abduction or removal of children." Section 25-402 makes no reference to any procedural requirements, much less temporary orders. Instead, § 25-402 ensures that a court handling matters involving the custody and care of children will verify at the inception of the proceeding that the court has proper authority to decide the pending matter, whether it be a petition for legal decision-making, parenting time, or visitation. To the extent it has any relevance to the question before us, the statute confirms the principle that in matters arising under Title 25, courts will act in accordance with the authority prescribed by the legislature.

**¶27**        Nor does § 25-404 support the trial court's ruling. "Parenting time" is defined as "the schedule of time during which each *parent* has access to a child at specified times." A.R.S. § 25-401(5) (emphasis added). "Visitation" is defined as "a schedule of time that occurs with a child by someone *other than* a legal parent." A.R.S. § 25-401(7) (emphasis added). Section 25-404(A) provides as follows:

> *A party to a legal decision-making and parenting time proceeding* may move for a temporary order. This motion must be supported by pleadings as provided in § 25-411. The court may award *temporary legal decision-making* and *parenting time* under the standards of § 25-403 after a hearing, or, if there is no objection, solely on the basis of the pleadings.

(Emphasis added.)

**¶28**        Notably absent from § 25-404 is any mention of visitation. The statute's plain language gives a trial court authority to issue temporary orders involving "temporary legal decision-making and parenting time." The trial court nonetheless found that Grandmother is a "party" to a legal decision-making or parenting time proceeding because she intervened in the paternity action. Grandmother would not be able to participate as a party in any aspect of the legal decision-making or parenting time proceedings, however, because she sought visitation under A.R.S. § 25-409(C). She did not seek in loco parentis visitation under § 25-409(A). Thus, the mere fact that Grandmother filed a petition for visitation in the paternity action did not give the trial court authority to treat her petition as a proceeding for legal decision-making or parenting time.

**¶29**        This construction of § 25-409 is supported by the legislative history of the pertinent statutes in Title 25. The former statutes did not include a specific definition for "visitation." *See* A.R.S. § 25-402 (2001). In 2012, the legislature adopted the current statutes that replaced "custody" with "legal decision-making" and added a new definition for "visitation." 2012 Ariz. Sess. Laws, ch. 309, § 4. As pertinent here, all references in Title 25, Chapter 4 to "custody" were replaced with "legal decision-making."[4]

---

[4]        The prior version of A.R.S. § 25-404(A) (1996) read as follows: "A party to a *custody* proceeding may move for a temporary *custody* order. This motion must be supported by pleadings as provided in section 25-411. The court may award temporary *custody* under the standards of section 25-403

*See id.* In light of these amendments, had the legislature intended to give nonparents the right to obtain temporary orders it could easily have done so by including the phrase "visitation" in § 25-404.[5] The legislative decision to omit "visitation" in § 25-404 therefore reflects the intent to exclude nonparents from those who have the right to obtain temporary orders for visitation.[6] *See State v. Gray*, 227 Ariz. 424, 429 n. 5, ¶ 15, 258 P.3d 242, 247 n. 5 (App. 2011) ("To the extent the legislature omitted references to attempted persuasion of a witness found in previous statutes, we presume such omissions were intentional."); *State v. Averyt*, 179 Ariz. 123, 128, 876 P.2d 1158, 1163 (App. 1994) ("Under the rules of statutory construction, when the legislature modifies the language of a statute, there is a presumption that a change in the existing law was intended.").

**¶30**        Construing the statute as outlined comports with the constitutional standards underpinning family relationships. "Parents have a constitutionally protected right under the Fourteenth Amendment to raise their children as they see fit." *Graville v. Dodge*, 195 Ariz. 119, 123-24, ¶ 19, 985 P.2d 604, 608-09 (App. 1999); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (recognizing that the "custody, care and nurture of the child reside first in the parents"). However, grandparent visitation granted within the parameters of § 25-409 "does not substantially infringe on parents' fundamental rights." *McGovern*, 201 Ariz. at 175, ¶ 9, 33 P.3d at 509. A presumption exists that "fit parents act in the best interests of their

---

after a hearing, or, if there is no objection, solely on the basis of the pleadings." (Emphasis added.)

[5]        If the legislature intended to place a visitation request on the same footing as legal decision-making and parenting time, presumably it would have said as much in A.R.S. § 25-407, which (1) provides that legal decision-making and parenting time hearings have priority status and (2) sets a sixty-day requirement for conducting an evidentiary hearing on a motion for temporary orders. Conspicuously absent from § 25-407 is any reference to visitation. Similarly, had the legislature intended to include visitation proceedings as part of temporary orders in a paternity action, it could have included the appropriate wording. *See* A.R.S. § 25-817.

[6]        Whether the legislature intended that nonparents who stand in loco parentis to the child may properly seek a temporary order for visitation is not an issue presented in this case. *See Egan,* 221 Ariz. at 232 n. 5, ¶ 8, 211 P.3d at 1216 n. 5 (declining to address the trial court's authority to issue a temporary visitation order requested by nonparent who stood in loco parentis).

children, *Troxel v. Granville*, 530 U.S. 57, 68 (2000), and a grandparent seeking visitation has the burden of rebutting the presumption "that a decision made by a fit parent to deny or limit visitation was made in the child's best interest," *McGovern*, 201 Ariz. at 177, ¶ 17, 33 P.3d at 511.

**¶31**     Consistent with the recognition of these parental rights, the legislature has "provided nonparents with fewer rights than parents." *Egan*, 221 Ariz. at 238, ¶ 31, 211 P.3d at 1222; *McGovern*, 201 Ariz. at 177, ¶ 16, 33 P.3d at 511 (noting the legislature's awareness of "parents' superior right to the custody and care of their children") (citations omitted).  These principles, together with the specific lines the legislature has drawn between parents and nonparents, leads to the logical conclusion that a parent has the right to seek temporary orders relating to legal decision-making and parenting time, but a nonparent seeking visitation lacks the same right.  *See McGovern*, 201 Ariz. at 178, ¶ 20, 33 P.3d at 512 ("With those concepts in mind, we conclude that a trial court must not only apply 'the statute as written,' but also must afford a fit parent the procedural and evidentiary safeguards discussed above in order to apply § 25-409 in a constitutionally acceptable manner.").

**¶32**     Finally, while A.R.S. § 12-123(B) provides broad authority for the superior court to manage its jurisdiction and issue orders necessary for the "administration of justice," *Arpaio*, 217 Ariz. at  576, ¶ 19, 177 P.3d at 318, the majority cites no authority in the domestic relations context indicating that the superior court has general inherent authority to act beyond the authority granted by statute.  *See Victor v. Victor*, 177 Ariz. 231, 233, 866 P.2d 899, 901 (App. 1993) ("Our domestic relations court has no underlying power to grant equitable relief outside of the statutory framework from which it derives its authority."); *see also* A.R.S.  § 25–311 ("The superior court is vested with original jurisdiction to hear and decide all matters arising pursuant to this chapter and pursuant to chapter 4, article 1 of this title."); *Finck v. Superior Court*, 177 Ariz. 417, 421-22, 868 P.2d 1000, 1004-05 (App. 1993) ("Before superior court jurisdiction expands in domestic relations actions [regarding] custody or visitation rights . . . the legislature must first create those rights[.]"), *approved in part sub nom., Finck v. O'Toole*, 179 Ariz. 404, 880 P.2d 624 (1994).

**¶33**     In sum, the majority opinion is in conflict with the plain language of § 25-404(A), the specific definitions of "parenting time" and "visitation" in § 25-401, the recent revisions of both of these statutes, and the constitutional presumptions afforded to parents.  *See Hall v. Read Dev., Inc.,* 229 Ariz. 277, 279, ¶ 6, 274 P.3d 1211, 1213 (App. 2012) ("We first look to the language [used by the legislature] and will give effect to the plain

meaning of its terms as the best indicator of intent unless those terms are ambiguous or would create an absurd result."); *see also O'Toole*, 179 Ariz. at 407, 880 P.2d at 627 ("The legislative scheme, naming specific classes of parties to whom visitation may be granted, suggests to us that the legislature did not intend to confer authority to award visitation to unspecified third parties.").

¶**34**       Because the trial court lacked the authority to issue a temporary order granting visitation to grandmother, I respectfully dissent. I would therefore grant Mother's requested relief by vacating the temporary visitation order.



Ruth A. Willingham · Clerk of the Court
FILED: gsh