NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIMELESS GLOBAL, LLC, a Nevada limited liability company;
JAMES STEWART, an individual, *Plaintiffs/Appellants,*

*v.*

JILL OLSON and SHAWN OLSON, wife and husband; and
MORGAN STANLEY SMITH BARNEY, LLC, a Delaware limited liability
company, *Defendants/Appellees.*

No. 1 CA-CV 15-0005
FILED 7-5-2016

Appeal from the Superior Court in Maricopa County
No. CV2013-051600
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

The Nathanson Law Firm, Scottsdale
By Philip J. Nathanson
*Counsel for Plaintiffs/Appellants*

Ballard Spahr LLP, Phoenix
By John G. Kerkorian, Heather Todd Horrocks
*Counsel for Defendants/Appellees Jill and Shawn Olson*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Jesse B. Simpson, Kimberly A. Demarchi
*Counsel for Defendant/Appellee Morgan Stanley Smith Barney, LLC*

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

**H O W E**, Judge:

**¶1**  Stewart[1] appeals the superior court's orders dismissing his amended complaint for failure to state a claim upon which relief could be granted, denying his motions for a new trial and for relief, and granting Jill Olson's motion for relief. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**  In February 2013, Stewart filed a complaint against the Olsons and Morgan Stanley, alleging claims of "rescission and cancellation due to breach of condition" and damages. Stewart alleged that during the summer of 2011, Stewart and Shawn discussed forming a company called "Timeless Global," where "individuals could share their documents, pictures, and/or full-motion videos . . . , with whom they wish, to be delivered exactly when they wish." Stewart alleged that during those discussions, Shawn "made a commitment to Plaintiffs, and became obligated to them, to raise the necessary capital to begin development of the business of the Company."

**¶3**  Stewart further alleged that in June 2011, Jill lent him $145,000 to conduct his business. Stewart alleged that he and Jill signed a promissory note, securities purchase agreement, and a unit purchase warrant (collectively, "loan documents"). The note obligated Stewart to repay the $145,000 plus $45,000 in interest by December 1, 2012, and provided that Stewart would use the proceeds to develop Timeless Global. The securities

---

[1]  James Stewart and Timeless Global, LLC, are plaintiffs against defendants Jill and Shawn Olson and Morgan Stanley Smith Barney, LLC ("MSSB") in the amended complaint, and Morgan Stanley & Co., Inc. in the complaint. Jill Olson filed a counterclaim against Stewart and Timeless Global and a third-party claim against Capsoul, LLC. As far as the record reveals, Timeless Global and Capsoul were both owned by Stewart during the proceedings before the superior court. Consequently, for convenience, we refer to Stewart, Timeless Global, and Capsoul collectively as "Stewart."

purchase agreement stated that in exchange for the $145,000 loan, Jill would own 11% of Timeless Global, and the unit purchase warrant stated that Jill would be entitled to purchase 11% of the outstanding shares for $190,000. Stewart used the money to "rais[e] the capital to develop the business," including developing a "corporate video."

¶4 The Olsons moved to dismiss the complaint for failure to (1) state a claim upon which relief could be granted under Arizona Rule of Civil Procedure 12(b)(6) and (2) allege fraud with particularity as Rule 9(b) requires. Morgan Stanley joined the Olsons' motion to dismiss, arguing that it was not a party to the agreements at issue and was merely the parent corporation of MSSB, Shawn's employer. After oral argument and upon Stewart's request to amend his complaint, the superior court granted Stewart leave to amend his complaint by April 18.

¶5 Meanwhile, Jill filed a counterclaim against Stewart and Timeless Global, adding Capsoul as a third-party defendant. Jill alleged that Stewart allowed Timeless Global's limited liability company status to lapse and in its place formed Capsoul. She alleged that Capsoul had operations that were "virtually identical to those of Timeless" Global and "performs the same services as Timeless" Global. Jill alleged breach of the note, the securities purchase agreement, the covenant of good faith and fair dealing, and fiduciary duty and claims of constructive fraud and violation of the Arizona Uniform Fraudulent Transfer Act. Jill also alleged that Capsoul was liable as the successor of Timeless Global and that she was entitled to the equivalent value of 11% of shares in Capsoul and the option of purchasing additional shares. Jill requested compensatory and punitive damages and declaratory relief.

¶6 After Stewart did not respond to Jill's counterclaim, Jill filed an application for entry of default under Arizona Rule of Civil Procedure 55(a) on April 23. The superior court issued a form order acknowledging receipt of the application for entry of default and stating that it would take no action because "commissioners handle Rule 55(b) Default Judgment proceedings." Pursuant to Rule 55(a)(3), the entry of default became effective May 7. The court ordered Jill to file all documents necessary to support the entry of a default judgment. On May 10, Stewart answered Jill's counterclaim, denying the allegations and alleging the affirmative defense of "rescission and cancellation due to breach of condition."

¶7 The Olsons renewed their motion to dismiss the complaint because Stewart had not met the superior court's April 18 deadline to file an amended complaint. Morgan Stanley joined. Jill also separately moved

to strike Stewart's answer to her counterclaim because Stewart filed it after the application for entry of default became effective on May 7. After oral argument, the superior court again ordered Stewart to file an amended complaint and ordered him to pay the Olsons' and Morgan Stanley's attorneys' fees for appearing at the hearing as a sanction. After a subsequent oral argument, the court granted Jill's motion to strike Stewart's answer.

¶8 Stewart filed an amended complaint against the Olsons and removed Morgan Stanley, but added MSSB. Stewart alleged claims of rescission and cancellation due to "breach of condition" and fraud, seeking damages for the fraud claim. Stewart alleged that Shawn, "an executive and manager of MORGAN STANLEY in Arizona," made commitments to Timeless to raise the necessary capital to begin development of Timeless Global. Stewart also alleged that Shawn brought two non-disclosure agreements ("NDAs") to a meeting, one with his name and the other with Jill's name. Stewart alleged that during that meeting, Shawn and Stewart talked about Timeless Global's business plan and that Shawn offered to invest $150,000. Stewart alleged that Jill signed the NDA in Shawn's place because of Shawn's position at MSSB.

¶9 Stewart further alleged that he signed the loan documents with Jill and that he received funding and began producing a video "to entice potential investors." But Stewart also alleged that Jill "was merely a nominee" of Shawn and that Stewart went into business with Shawn, not Jill. Stewart further alleged that "[a]fter all the materials were developed and created for SHAWN OLSON's benefit," he "completely failed and refused to perform his commitments, assurances, representations and obligations, which conduct constituted an abandonment by SHAWN OLSON of his obligations under the arrangement he made with Plaintiffs to arrange for and provide the funding and capitalization of TIMELESS GLOBAL." Stewart alleged finally that Shawn took no "material steps . . . to fulfill his commitments and obligations and, as a result, TIMELESS GLOBAL was not able to develop its products or systems."

¶10 The Olsons moved to dismiss the complaint for failure to state a claim upon which relief could be granted and failure to plead fraud with particularity, and they asked that the dismissal be with prejudice because Stewart had the opportunity to amend his complaint and further amendment would be futile. Specifically, the Olsons argued that a dismissal was appropriate because the amended complaint was inconsistent with the allegations in Jill's counterclaim, which had become judicial admissions of Stewart by nature of the entry of default. The Olsons also argued that the amended complaint did not state a claim upon which relief could be

granted because Shawn's alleged misrepresentations were unrelated to the loan documents, which were the sole basis for which Stewart could be entitled to rescission. The Olsons further argued that the amended complaint did not allege fraud with particularity and that Shawn's alleged misrepresentations regarded future conduct. The Olsons requested attorneys' fees and costs pursuant to the promissory note, securities purchase agreement, and A.R.S. §§ 12–341 and 12–341.01.

¶11 MSSB also moved to dismiss the amended complaint under Rule 12(b)(6). The company argued that the action was a dispute between the Olsons and Stewart and that Stewart had not alleged that Shawn was acting within the scope of his employment. MSSB also argued that the amended complaint was defective because the fraud claim alleged no actionable misrepresentations and the rescission claim failed because the company was not a party to or beneficiary of any of the agreements at issue.

¶12 After Stewart failed to respond to their motions to dismiss, the Olsons and MSSB moved for summary disposition. The superior court granted the motions to dismiss the complaint "for the reasons set forth in the respective Motions." The court also found that Stewart's failure to respond constituted consent to the court's granting of the motions. The court ordered that its prior sanction of attorneys' fees against Stewart include attorneys' fees for filing the renewed motion to dismiss. The Olsons and MSSB filed their applications for attorneys' fees; Stewart objected.

¶13 At a status conference in October 2013, Stewart requested a "due process hearing" on the motions to dismiss and the attorneys' fees sanction. The court denied the request and ordered Stewart to file a memorandum regarding whether Arizona Rule of Civil Procedure 54(b) language should be included in the form of judgment. Stewart filed the memorandum, arguing that because the issues raised in the complaint were also raised in the answer to the counterclaim, no final judgment could be entered because judgment was only entered on the complaint. The superior court subsequently awarded the Olsons and MSSB reasonable fees and costs and declined to enter a final judgment on the matter under Rule 54(b). Instead, the court stated it would enter a final judgement "[a]t the conclusion of all proceedings."

¶14 Meanwhile, Jill moved for partial final default judgments under Rules 54(b) and 55(b) on her counterclaim against Stewart. A superior court commissioner denied the Rule 55(b) motion regarding Stewart individually, but granted it regarding Timeless Global and Capsoul. The commissioner concluded that because Jill did not personally

serve Stewart with the motion for entry of default, Jill did not meet Rule 55(a)'s requirements for entry of default.

¶15 Jill moved for relief under Arizona Rule of Civil Procedure 60(c)(6) from the superior court's order referring the default matter to a commissioner. Jill argued that all proceedings before the superior court should be heard by the same judge, so that the court could enter a single "comprehensive judgment." She contended that the superior court had already declined to issue partial judgments on particular claims and defenses and had ordered the parties to submit final forms of judgment at the conclusion of all proceedings. A month later, Jill moved for summary disposition of her motion for relief because Stewart had not responded.

¶16 The superior court scheduled a hearing regarding Jill's motion for application for the entry of a default judgment for March 2014. The Olsons notified Stewart and MSSB of the hearing and their intent to request entry of a default judgment and to submit final forms of judgment resolving all claims and counterclaims. The superior court continued the default hearing to April, however, and the Olsons once again notified the parties of their intent to request a default judgment. The court also ordered Stewart to respond to Jill's Rule 60 motion. Stewart responded, arguing that the Olsons' request for relief was merely a "horizontal appeal" of the commissioner's order and Rule 60 did not authorize any relief because the Olsons were merely disagreeing with the commissioner's order.

¶17 Jill replied that she was entitled to relief because the commissioner's order conflicted with the superior court's order. She contended that the commissioner's order requiring her to once again serve Stewart with the application for default contradicted (1) the superior court's order striking Stewart's answer to her counterclaim and (2) the superior court clerk's entering the default. The superior court granted Jill's Rule 60 motion. The court found that the commissioner's ruling was "manifestly erroneous" and that the "law of the case" doctrine—a judicial policy of not reopening questions previously decided in the same case by the same court—did not prevent the superior court from revisiting the commissioner's decision. The court concluded that "under the circumstances presented, personal service of the application on both the individual <u>and</u> his attorney was not necessary."

¶18 The superior court entered a final judgment in favor of the Olsons and MSSB and certified the judgment pursuant to Rule 54(c). The court dismissed Stewart's complaint with prejudice and granted the Olsons attorneys' fees and costs and MSSB attorneys' fees, costs, and post-

judgment interest. On the counterclaim, the court entered judgment in favor of Jill and against Stewart for $190,000 in damages, pre- and post-judgment interest, attorneys' fees, and 11% of shares in Capsoul or an equivalent value. The court also held that Jill retained an option to purchase additional ownership interest in Capsoul.

**¶19** Stewart moved for a new trial under Rule 59(a). He argued that the complaint stated a claim upon which relief could be granted, that he was not in default of the counterclaim, and that the superior court erred in granting Jill's Rule 60 motion. Stewart also moved for relief under Rule 55(c) and 60(c) from the default judgment and the order striking his answer to the counterclaim. After briefing, the superior court denied Stewart's motions. Stewart timely appealed; after this Court stayed the appeal for the superior court to sign one of its orders, we reinstated the appeal.

## DISCUSSION

### 1. Motion for a New Trial

**¶20** Stewart argues that the superior court erred in denying his motion for a new trial because the complaint stated claims for which relief could be granted. We review the denial of a motion for a new trial for an abuse of discretion, *Summers v. Gloor*, 239 Ariz. 222, 225 ¶ 10, 368 P.3d 930, 933 (App. 2016), but we review de novo the court's order dismissing a complaint under Rule 12(b)(6), *Coleman v. City of Mesa*, 230 Ariz. 352, 355–56 ¶ 7, 284 P.3d 863, 866–67 (2012). In determining whether a complaint states a claim upon which relief may be granted, we assume the truth of all well-pled factual allegations and resolve all reasonable inferences in the plaintiffs' favor, but "mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 7, 189 P.3d 344, 346 (2008).

**¶21** In reviewing whether the dismissal was appropriate under Rule 12(b)(6), we consider the complaint and written instruments attached to it. *See* Ariz. R. Civ. P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in a motion. A copy of a written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Cullen*, 218 Ariz. at 419 ¶ 7, 189 P.3d at 346. Dismissal is appropriate under Rule 12(b)(6) when, as a matter of law, plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof. *Rodriguez v. Fox News Network, L.L.C.*, 238 Ariz. 36, 38–39 ¶ 5, 356 P.3d 322, 324–25 (App. 2015). Because the amended complaint

did not state a claim upon which relief could be granted, the superior court did not err in dismissing Stewart's complaint under Rule 12(b)(6).

**1(a). The Claims Against the Olsons**

¶22 In count 1, Stewart sought rescission and cancellation of the loan documents because of an alleged "breach of condition" on Shawn's part that precluded the written agreements from taking effect. Stewart alleged that Shawn made promises that Stewart relied on and that as a result of Shawn's failure to fulfill his promises, Stewart was unable to "develop [his] products and systems." As an initial matter, rescission is not a cause of action, but a remedy that may be sought based on various theories, including fraud and breach of contract. *See Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969) (action for rescission based on fraud); *Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41 (App. 1980) (action for rescission based on breach of contract; stating that upon breach, the aggrieved party has three remedies: rescission, continued performance, or termination and damages). We therefore construe Stewart's claim as seeking rescission as a remedy for an alleged "breach of a condition."

¶23 The "remedy of rescission abrogates the contract and undoes it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." *Hall v. Read Dev., Inc.*, 229 Ariz. 277, 285 ¶ 30, 274 P.3d 1211, 1219 (App. 2012) (internal quotation marks and citation omitted). Rescission therefore restores the parties to the status quo before entering into the contract. *Reed v. McLaws*, 56 Ariz. 556, 563, 110 P.2d 222, 225 (1941). "The general rule is that a party seeking to rescind a contract must restore or offer to restore to the other party that which he has received under the contract." *Jennings*, 105 Ariz. at 171, 461 P.2d at 165.

¶24 Here, Stewart has failed to allege that he offered to pay back the $145,000 loan from Jill. In fact, the amended complaint alleged that Stewart entered into contracts with Jill to obtain the loan, he received the loan, and he used the loan proceeds in developing Timeless Global. Because Stewart did not offer to restore Jill the loan proceeds, Stewart is not entitled to rescission of the loan documents. Consequently, Stewart has not alleged a claim upon which relief could be granted in count 1.

¶25 In count 2, Stewart alleged that Shawn made misrepresentations with knowledge and intent to defraud him. All

allegations of fraud must state the circumstances constituting fraud with particularity. Ariz. R. Civ. P. 9(b). While no "magic language" is required, a claimant must plead all the essential elements of fraud in the complaint. *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 155–56 ¶ 53, 211 P.3d 16, 33–34 (App. 2009). A showing of actual fraud requires: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Taeger v. Catholic Family & Cmty. Servs.*, 196 Ariz. 285, 294 ¶ 28, 995 P.2d 721, 730 (App. 1999).

**¶26** Here, Stewart's complaint does not contain short and plain statements alleging with particularity the nine elements of actual fraud. The amended complaint does not allege that Shawn made misrepresentations without the intent to perform. Specifically, it does not allege that Shawn knew that the misrepresentations were false at the time of making them or was ignorant of their truth; that he made them with the intent that Stewart would rely upon them in a manner reasonably contemplated; and that Stewart was ignorant of the misrepresentation's falsity. Consequently, Stewart has not alleged a claim upon which relief could be granted in count 2. Accordingly, because the amended complaint did not establish a claim upon which relief could be granted, the superior court did not err in dismissing it under Rule 12(b)(6).

### 1(b). The Claims Against MSSB

**¶27** Because the amended complaint did not state a claim upon which relief could be granted against the Olsons and because the claims against MSSB are secondary liability claims predicated upon the alleged conduct of Shawn as an MSSB employee, Stewart's failure to state a claim for relief against the Olsons required dismissal of the claims against MSSB. *See Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274, 488 P.2d 477, 479 (1971) (holding that employee's dismissal with prejudice barred plaintiff's vicarious liability claims against employer where employer's "liability [wa]s based solely on the negligent acts of [employee]"). Thus, the superior court did not err in granting MSSB's motion to dismiss under Rule 12(b)(6).

### 2. Motions for Relief

**¶28** Stewart next argues that the superior court erred in denying his Rule 60(c)(1) motion for relief and granting Jill's Rule 60(c)(6) motion. A

superior court enjoys broad discretion in deciding whether to set aside judgments under Rule 60(c). *Woodbridge Structured Funding, LLC v. Ariz. Lottery*, 235 Ariz. 25, 29 ¶ 21, 326 P.3d 292, 296 (App. 2014). We review its decision for an abuse of discretion. *Rogone v. Correia*, 236 Ariz. 43, 48 ¶ 12, 335 P.3d 1122, 1127 (App. 2014). Because Stewart was not entitled to relief under Rule 60(c), but Jill was, the superior court did not err in denying Stewart's motion and granting Jill's motion.

### 2(a). Default Judgment

**¶29** Stewart first argues that the superior court erred in denying his Rule 60(c) motion because he did not default on Jill's counterclaim. A court may set aside an entry of default for "good cause shown" and a default judgment in accordance with Rule 60(c). Ariz. R. Civ. P. 55(c). Under Rule 60(c), a court may relieve a party from a final judgment for "mistake, inadvertence, surprise or excusable neglect." Ariz. R. Civ. P. 60(c)(1). "The law favors resolution on the merits and therefore resolves all doubts in favor of the moving party." *Richas v. Superior Court*, 133 Ariz. 512, 514, 652 P.2d 1035, 1037 (1982). Thus, a superior court has broad discretion and we will not reverse that court's decision on a motion to set aside a default judgment absent a clear abuse of that discretion. *See Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 595 ¶ 17, 161 P.3d 1253, 1259 (App. 2007). A court abuses its discretion when no evidence supports its conclusion or the reasons given are clearly untenable, legally incorrect, or amount to a denial of justice. *Searchtoppers.com, L.L.C. v. TrustCash LLC*, 231 Ariz. 236, 241 ¶ 20, 293 P.3d 512, 517 (App. 2012).

**¶30** Stewart argues that because the superior court's order stated that it took "no action" on Jill's application for entry of default, it "negates any 'acceptance' required by [Rule] 55(a)(2)." But Rule 55(a) states that the "acceptance by the clerk of the filing of the application for entry of default constitutes the entry of default." Ariz. R. Civ. P. 55(a)(2). Further, the default "shall be effective ten (10) days after the filing of the application for entry of default," unless the opposing party defends the action before the time expires. Ariz. R. Civ. P. 55(a)(3)–(4).

**¶31** Here, Stewart was not entitled to Rule 60(c) relief. After Stewart failed to respond to Jill's counterclaim, Jill filed and served the application for entry of default on April 23; therefore, Stewart had until May 7 to respond to the counterclaim. Stewart did not file an answer until May 10. The court's statement regarding taking "no action" referred to the entry of the default judgment under Rule 55(b); the court had already acknowledged receipt of Jill's application for default. Consequently,

because Stewart did not file an answer before the default became effective, the superior court did not err in striking Stewart's answer and finding that he defaulted on Jill's counterclaim.

## 2(b). Horizontal Appeal

¶32            Stewart next argues that the superior court erred in granting Jill's Rule 60(c) motion because she was improperly "horizontally" appealing the commissioner's order to the superior court. Under Rule 60(c)(6), a court may relieve a party from a final judgment for any reason justifying relief, provided that the movant can show "extraordinary circumstances of hardship or injustice justifying relief" and "a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses of rule 60(c)." *Hilgeman v. Am. Mortg. Sec., Inc.*, 196 Ariz. 215, 220 ¶ 15, 994 P.2d 1030, 1035 (App. 2000). Courts must consider the totality of facts and circumstances to determine whether Rule 60(c)(6) relief is appropriate. *Amanti Elec., Inc. v. Engineered Structures, Inc.*, 229 Ariz. 430, 432 ¶ 7, 276 P.3d 499, 501 (App. 2012).

¶33            The policy against horizontal appeals forms part of the general concept of "law of the case" as applied to decisions of the same court. *Powell-Cerkonery v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278, 860 P.2d 1328, 1331 (App. 1993). A party seeks a "horizontal appeal" when it requests a second trial judge to reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration. *Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 214, 801 P.2d 445, 449 (App. 1990). The doctrine is one of procedure, not of substance, however; a "court does not lack the power to change a ruling simply because it ruled on the question at an earlier stage." *Hall v. Smith*, 214 Ariz. 309, 317 ¶ 28, 152 P.3d 1192, 1200 (App. 2007). Because of the "potentially harsh nature of the doctrine," *Powell-Cerkonery*, 176 Ariz. at 279, 860 P.2d at 1332, we will not apply it if doing so would result in a "manifestly unjust decision," *Sibley v. Jeffreys*, 81 Ariz. 272, 276, 305 P.2d 427, 429 (1956). Similarly, reliance upon law of the case does not justify a court's refusal to reconsider a ruling when an error in the first decision renders it "manifestly erroneous." *Donlann v. Macgurn*, 203 Ariz. 380, 386 ¶ 29, 55 P.3d 74, 80 (App. 2002).

¶34            Here, Jill was entitled to relief under Rule 60(c). The superior court found that the commissioner's decision was manifestly erroneous, and therefore, the law-of-the-case doctrine did not preclude it from revisiting the commissioner's decision. The court stated "[t]o be clear," "under the circumstances presented, personal service of the application on

both the individual <u>and</u> his attorney was not necessary." Moreover, the record shows that the superior court reached this conclusion after holding a default hearing. When no transcript is provided on appeal, the reviewing court assumes that the record supports the superior court's decision. *Kline v. Kline*, 221 Ariz. 564, 572 ¶ 33, 212 P.3d 902, 910 (App. 2009). The duty to order and include the transcript in the record on appeal was Stewart's, Ariz. R. Civ. App. P. 11(b), and he failed to do so. Consequently, the superior court did not err in granting Jill's Rule 60(c) motion for relief.

### 3. Attorneys' Fees on Appeal

¶35 The Olsons request attorneys' fees incurred on appeal pursuant to the loan documents and A.R.S. § 12–341.01. Because a contractual basis exists for Jill's fees in enforcing her contractual rights against Stewart, she is entitled to her fees under the loan documents and A.R.S. § 12–341.01 for defending the judgment regarding the counterclaim upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See F.D.I.C. v. Adams*, 187 Ariz. 585, 595, 931 P.2d 1095, 1105 (App. 1996) ("[A] contractual provision for attorneys' fees will be enforced according to its terms."). Moreover, because the allegations in the complaint arose out of the Olsons' alleged breach of obligations in connection with enforcing the loan documents, the claims arose out of contract. Thus, the Olsons are entitled to fees for defending the judgment regarding the complaint under A.R.S. § 12–341.01 upon compliance with Rule 21. *See* A.R.S. § 12–341.01 ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees.").

¶36 MSSB requests attorneys' fees under A.R.S. § 12–349 because (1) Stewart had no claims against MSSB based on its own acts or as an employer of Shawn; (2) Stewart did not address the *respondeat superior* issue in his briefs, despite it being the basis for the superior court's dismissal of MSSB; and (3) Stewart failed to respond to MSSB's repeated requests to dismiss it from the appeal. But because the record does not show that Stewart engaged in any of the actions justifying an award of attorneys' fees to MSSB under A.R.S. § 12–349, we deny MSSB's request.

**CONCLUSION**

¶37         For the foregoing reasons, we affirm.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : AA